# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN TUCKER, on behalf of herself and all other similarly situated, | : | |
| Plaintiff, | | **Case No. 2:22-cv-184** |
| v. | | **Judge Sarah D. Morrison** |
| MARIETTA AREA HEALTH CARE, INC., d/b/a Memorial Health System, | : | **Magistrate Judge Elizabeth A. Preston Deavers** |
| Defendants. | | |
| | | |
| VANESSA TALLMAN, on behalf of herself and all other similarly situated, | : | |
| Plaintiff, | | **Case No. 2:22-cv-221** |
| v. | | **Judge Sarah D. Morrison** |
| MARIETTA AREA HEALTH CARE, INC., d/b/a Memorial Health System, | : | **Magistrate Judge Elizabeth A. Preston Deavers** |
| Defendants. | | |
| | | |
| JASON MCCUMBERS, on behalf of himself and all other similarly situated, | : | |
| Plaintiff, | | **Case No. 2:22-cv-385** |
| v. | | **Judge Sarah D. Morrison** |
| MARIETTA AREA HEALTH CARE, INC., d/b/a Memorial Health System, | : | **Magistrate Judge Elizabeth A. Preston Deavers** |
| Defendants. | | |

**OPINION AND ORDER**

This matter comes before the Court on two defense motions—a Motion to Dismiss the Consolidated Amended Complaint (ECF No. 10) and a Motion to Strike Class Allegations (ECF No. 11). Both motions are fully briefed and ready for decision.

For the reasons stated herein, Defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part and the motion to strike is **DENIED**.

**I.    BACKGROUND**

The following summary is drawn from the factual allegations in the Consolidated Amended Class Action Complaint. (ECF No. 9.)

Defendant Marietta Area Health Care, Inc. ("MHS") is a regional medical services business that provides a wide range of medical services with locations throughout Ohio and West Virginia. (*Id.* at ¶ 1.) In 2021, MHS was the target of a cyberattack, during the course of which, a criminal third party gained access to its computer systems and likely acquired sensitive information involving approximately 216,478 of its current and former patients (the "Data Breach"). (*Id.* at ¶ 2.) Plaintiffs believe that the Data Breach compromised both personally identifiable information ("PII") and protected health information ("PHI"), but the full extent of the breach is unknown. (*Id.* at ¶¶ 2–3.)

Plaintiffs claim that MHS is responsible for allowing the Data Breach due to multiple acts of negligence and recklessness, including that MHS failed to detect

that unauthorized third parties gained access to its network and compromised substantial amounts of patient data. (*Id.* at ¶ 6–7.)

After learning of the Data Breach, Plaintiffs brought this putative class action lawsuit asserting the following claims against MHS: negligence (Count I), negligence *per se* (Count II), breach of an express contract (Count III), breach of an implied contract (Count IV), breach of fiduciary duty (Count V), unjust enrichment (Count VI), and a claim for declaratory judgment (Count VII). MHS now moves to dismiss each claim and to strike Plaintiffs' class allegations.

## II. JURISDICTION

The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), which confers original jurisdiction over class actions with at least 100 members where the amount in controversy exceeds $5 million, and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)–(6). The claims of individual class members are aggregated to determine the amount in controversy. 28 U.S.C. § 1332(d)(6). Each requirement is satisfied. Plaintiffs alleges the putative class exceeds 100 members, that aggregated claims of all members exceed $5 million, and that simple diversity is met. (Compl., ¶¶ 22–35.)

## III. MOTION TO DISMISS

### A. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

    B.    ANALYSIS

        1.    **Plaintiffs' claims are not preempted by Ohio law.**

Defendant's first basis for dismissal is its argument that each of Plaintiffs' claims are preempted under *Biddle v. Warren Gen. Hosp.*, 715 N.E.2d 518 (Ohio 1999). (Mot., ECF No. 10, PAGEID # 202.) Plaintiffs respond that their claims are distinct from *Biddle* claims and are not preempted. (Resp., ECF No. 13, PAGEID # 276.)

4

In *Biddle*, the Ohio Supreme Court determined that a hospital that released patient medical information to a law firm for purposes of collecting unpaid medical bills could be liable for the tort of breach of confidence (*i.e.* a "*Biddle*" claim). *Id.* at 524.[1] The Court defined a "*Biddle*" claim as a claim for "the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Id.* at 523. In establishing the tort, the Ohio Supreme Court made clear that other common law claims are not available where a *Biddle* claim exists:

> [A]s to appellees' continued insistence that they be entitled to pursue other theories of liability, we agree with the reasoning of the appellate court that these other theories are either unavailable, inapplicable because of their respective doctrinal limitations, or subsumed by the tort of breach of confidence [a *Biddle* claim]. Indeed, it is the very awkwardness of the traditional causes of action that justifies the recognition of the tort for breach of confidence in the first place.

*Biddle*, at 408–09 (holding that plaintiff's common law claims of invasion of privacy, intentional infliction of emotional distress, and negligence were subsumed by the newly established tort).

Although case law delineating the parameters of a *Biddle* claim is still developing, the consolidation of other common law theories of recovery into that tort

---

[1] Where, as here, the Court has subject matter jurisdiction over issues of state law, the forum state's choice-of-law rules determine which state's substantive law will apply. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996). In addition, where "neither party argues that the forum state's choice-of-law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law." *Wilkes Assocs. v. Hollander Indus. Corp.*, 144 F. Supp. 2d 944, 949 n.4 (S.D. Ohio 2001) (Rice, C.J.) (quotations omitted). No such argument is made here, so the Court applies the substantive law of Ohio.

5

is certain. *See Norris v. Smart Document Solutions, LLC*, 483 Fed. Appx. 247, 248–49 (6th Cir. 2012) (recognizing that a *Biddle* claim is "its own independent tort" that foreclosed plaintiffs from proceeding on their common law conversion claims); *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 673 (Ohio App. Aug. 14, 2015) (holding that breach of fiduciary duty tort was "subsumed" by *Biddle* claims).

On the other hand, several courts (including this Court) have held that *Biddle* claims do "not allow plaintiffs to pursue claims for breach of confidence where third parties intercepted or accessed plaintiffs' privileged information" rather than the information being "disclosed" by the defendant. *See Foster v. Health Recovery Services, Inc.*, 493 F.Supp.3d 622, 635–36 (S.D. Ohio 2020) (Marbley, C.J.) (applying Ohio law); *Scott v. Ohio Dept. of Rehab. & Corr.*, 999 N.E.2d 231, 240 (Ohio App. 2013); *Sheldon*, at 675. The factual allegations in *Foster* were that the defendant was aware of security vulnerabilities but did nothing to remedy those vulnerabilities before an unauthorized third party breached the network and potentially gained unauthorized access to the plaintiff's confidential medical information. *Id.* at 635–36. Because the case involved unauthorized access by a third party and the defendant "did not commit an intentional or unintentional act of disclosure," the plaintiff failed to state a *Biddle* claim. *Id.*

Similarly, in *Scott*, an Ohio court granted summary judgment to the defendant on a *Biddle* claim brought by prisoners whose medical information was left in trash cans that were accessible to other inmates. *Id.*, at 240. That court reasoned that the factual allegations did not involve any disclosure, either

6

intentional or unintentional, of the confidential information by defendants. Absent such a disclosure, the plaintiffs did not "fulfill the elements of *Biddle*." *Id*. And in *Sheldon*, another Ohio court dismissed a *Biddle* claim when there were no allegations that the defendant "disclosed" confidential information. In that case, the plaintiff sued her ex-husband's employer after he gained access to her medical information. Rather than disclosing the information, the defendant prohibited such conduct and the ex-husband acted intentionally and willfully in a clear departure from his employment. *Id.*, at 668, 673–74.

This case is not a *Biddle* case. Because *Biddle* applies only when a defendant has made a disclosure, there is no basis for this Court to find that *Biddle* preempted all common law causes of action for a completely different type of claim—a claim premised upon a health care defendant's alleged failure to adequately protect and secure PII and PHI allowing a theft by a third-party. Preemption occurs when there is either a conflict of laws or an intent that the preempting law should exclusively occupy a particular field of law.[2] But here there is no conflict—*Biddle* does not address situations like what is alleged to have occurred here.

MHS is not entitled to dismissal of Plaintiffs' claims based on preemption.

---

[2] Preemption may be express or implied. But all types of preemption are based on the notion that the preempting law addresses an issue in such a way that it either "exclusively occupies that field" or when conflicting laws would make compliance with both impossible. *See, e.g., Torres v. Precision Industries, Inc.*, 995 F.3d 485, 491 (6th Cir. 2021) (citations omitted) (discussing types of federal preemption).

### 2. Plaintiffs' negligence claims are barred by the economic loss doctrine.

MHS moves to dismiss Plaintiffs' claims for negligence and negligence *per se* because, among other reasons, they are barred by the economic loss doctrine. (Mot., PAGEID # 208.) In response, Plaintiffs argue that their negligence claims fall under several exceptions to the economic loss doctrine. (Resp., PAGEID # 283.)

The doctrine of economic loss prevents a plaintiff's recovery in tort for damages of a purely economic nature. *See Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005) ("The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.") (citations and quotations omitted). Accordingly, even assuming that Plaintiffs have satisfied the basic elements of their negligence claims, they must also allege an injury other than economic loss to state a cognizable claim for relief. They have not.

Plaintiffs allege that they suffered injuries involving invasion and loss of privacy, emotional distress, stress, anxiety, fear, nervousness, and anger. (Am. Compl. ¶¶ 19, 102, 113, 120, 147.) As this Court has previously recognized, the economic loss doctrine precludes a claim based on mental injuries unless they are accompanied by "an allegation that Plaintiff 'feared or saw some quantifiable physical loss.'" *Foster*, at 638 (quoting *Lawyers Coop. Publg. Co. v. Meuthing*, 603 N.E.2d 969, 975 (Ohio 1992)). But the only fears identified in the Amended Complaint are "concerns for future identity theft." (*Id.* at ¶¶ 113, 138, 147.) This is insufficient.

8

As for their alleged invasion of privacy injury, the only case that Plaintiffs point to for support that such an allegation is sufficient to avoid the economic loss doctrine involved the tort of negligent invasion of the right of privacy. *See Herman v. Kratche*, No. 86697, 2006 WL 3240680, at 6* (Ohio App. Nov. 9, 2006). Unlike the negligence claims at issue here, the tort of negligent invasion of privacy specifically defines "mental suffering, shame, or humiliation" as compensable injuries. *Id.* There is no basis to extend *Herman* to Plaintiffs' negligence claims. *See Foster*, at 638 ("Ordinarily, under the economic loss rule, a plaintiff who has suffered economic loss due to another's negligence cannot recover damages.") (citing *Corporex*, 835 N.E.2d at 704).

Plaintiffs seek a different result and argue that several exceptions to the economic loss doctrine apply in this case: (1) the foreseeability of the data breach, (2) the special relationship of the parties, and (3) the nature of MHS's duty to secure confidential information.

### a. Foreseeability of Breach

Plaintiffs first argue that the economic loss rule does not bar their negligence claim because MHS is responsible for foreseeable harm. (Resp., PAGEID # 285.) In support of their argument, Plaintiffs cite cases from Georgia and Pennsylvania—none of which apply Ohio law. (*Id.*) In fact, the Court's own research revealed no case recognizing such an exception under Ohio law. This argument fails.

### b. Special Relationship of the Parties

Plaintiffs next argue that the "special relationship" exception applies to permit economic loss damages to be pursued in tort claims. (Resp., PAGEID # 286.).

9

However, this argument ignores that the Supreme Court of Ohio has limited the application of this exception to:

> [T]hose limited circumstances in which a person, in the course of business, negligently supplies false information, knowing that the recipient either intends to rely on it in business, or knowing that the recipient intends to pass the information on to a foreseen third party or limited class of third persons who intend to rely on it in business.

*Foster*, at 638–39 (citing *Corporex*, at 705). The "special relationship" exception is no more than a substitute for privity of contract for third parties that are known to a defendant. *Id*. Plaintiffs have not provided any legal basis for the Court to extend the application of the special relationship exception to the facts alleged here. This argument fails.

### c.     Nature of MHS's Duty

In their final effort to avoid the economic loss doctrine, Plaintiffs present several arguments about the nature of MHS's duty, including whether it was created by statute or by voluntary undertaking. (Resp., PAGEID # 287–88.)

These arguments miss the point. The economic loss doctrine does not hinge on how the defendant's duty arose, rather, the focus is on the type of injury that the plaintiff suffered. "Indirect economic damages that do not arise from tangible physical injury to persons or from tangible property may only be recovered in contract." *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 667 (Ohio 1995). Thus, the economic-loss rule applies in a tort action where, as here, economic loss is unaccompanied by personal injury or property damage. *Id.*

MHS's Motion to Dismiss Count I for negligence and Count II for negligence *per se* is **GRANTED**.

### 3. Plaintiffs have not sufficiently alleged existence of a contract.

In Counts III and IV of the Amended Complaint, Plaintiffs assert claims for breach of express and implied contract. MHS argues that Plaintiffs have failed to state a claim for each. (Mot., PAGEID # 211.)

To state a claim for breach of contract, a plaintiff is required to plead "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *Foster*, at 639. Whether express or implied, a contract exists if the following elements are met: "offer, acceptance, consideration, and a meeting of the minds." *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F.Supp.2d 812, 817 (N.D. Ohio 2006) (applying Ohio law). The only difference between a breach of contract claim involving an express or implied contract is how these elements are proven.

For an express contract, "assent to the contract's terms is formally expressed in the offer and acceptance of the parties." *Reali Giampetro & Scott v. Society Nat'l Bank*, 729 N.E.2d 1259, 1263 (Ohio App. 1999). Thus, breach of an express contract is proven through examination of the parties' formal agreement. *See Foster*, at 640 ("It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.") (quotations omitted).

11

For an implied-in-fact contract, the elements of the contract are established if the circumstances surrounding the parties' transaction make it reasonably certain that the contract exists "as a matter of tacit understanding." *Legros v. Tarr*, 540 N.E.2d 257, 263 (Ohio 1989). Thus, the terms of an implied in fact contract (and whether they were breached) "are determined by the Court based upon the facts and circumstances surrounding the transaction." *Foster,* at 640.

### a. Express Contract

For their breach of express contract claim, Plaintiffs allege that MHS "promised and w[as] obligated to: (a) provide healthcare to Plaintiffs and Class Members; and (b) protect Plaintiffs' and the Class Members' Sensitive Information: (i) provided to obtain such healthcare; and/or (ii) created as a result of providing such healthcare." (Am. Compl. ¶ 185.) In support of this "promise" by MHS, Plaintiffs cite only to MHS's Notice of Privacy Practice, which it attaches to its Amended Complaint as Exhibit 2.[3] (Notice of Privacy Practice, ECF No. 9-2.)

The parties' Notice of Privacy Policy is not contractual in nature. Instead, such notices serve to "inform patients of their rights under federal law—specifically [HIPAA]—and the duties imposed. . . by these statutory provisions." *Brush v. Miami Beach Healthcare Grp. Ltd.*, 38 F.Supp.3d 1359, 1367 (S.D. Fla. 2017); *see also J.R. v. Walgreens Boots Alliance, Inc.*, 470 F.Supp.3d 534 (D.S.C. 2020) (a notice of privacy policy cannot create contractual obligations because entities are

---

[3] The Court may consider matters beyond the complaint when deciding a motion to dismiss "when the document outside the complaint is referred to or attached to the pleadings and is integral to plaintiff's claims." *Commercial Money Center, Inc. v. Illinois Union Ins. Co.*, 508 F. 3d 327, 336 (6th Cir. 2007).

12

required by law to comply with HIPAA without receiving consideration); *cf. Clayton v. Cleveland Clinic*, No. 101854, 2015 WL 1851517 (Ohio App. Apr. 23, 2015) (citations omitted) ("[I]n all contracts, express or implied, parties must intend to be bound. Absent mutual assent a handbook becomes merely a unilateral statement of rules and policies which create no obligations and rights."). And, although HIPAA requires that MHS provide patients with the Notice of Privacy Policy, HIPAA provides no private right of action. *See Menorah Park Ctr. for Senior Living v. Rolston*, 173 N.E.3d 432, 435 (Ohio 2020). Plaintiffs cannot use a HIPAA-required notice as a basis for a breach of contract claim; to hold otherwise would be to create a private, statutory cause of action where none exists. *See e.g., Cairel v. Jessamine Cty. Fiscal Court*, No. 5:15-cv-186-JMH, 2015 WL 8967884, at *4 (E.D. Ky. Dec. 15, 2015) ("Regardless of whether the contract included a HIPAA provision, there simply is no private right of action for violations of HIPAA, at the state or federal level."); *cf. Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 118 (2011) (Courts will not allow a breach of contract claim where "[t]he statutory and contractual obligations. . . are one and the same.").

In an effort to bootstrap into an express contract claim, Plaintiffs allege that the privacy notice contains "at least one" promise that HIPAA regulations do not require within privacy notices—a promise to "release the minimum amount of your information necessary." (Am. Compl. ¶ 188.) However, even if this language did create a contractual obligation by MHS, there is no allegation that it was breached. Plaintiffs' do not allege that MHS "released" more than the minimum of their

13

information, but rather that a criminal third-party improperly accessed MHS's systems and acquired it.

Accordingly, Plaintiffs have not identified any express contractual provision in which MHS agreed to provide them with data security services in exchange for consideration. Accordingly, MHS's Motion to Dismiss is **GRANTED** as to Count III.

### b.     Implied Contract

For the same reasons discussed above, Plaintiffs' efforts to premise their breach of implied contract claim on the Notice of Privacy Practices also fail. And, while Plaintiffs allege that MHS's representations "include[e], but [are] not limited to, express representations found in its Privacy Notice," (¶ 209), Plaintiffs do not identify these representations, what obligations they created, or how they were breached by MHS.

Even if the terms of the Notice of Privacy Policy could be construed as an implied contract between the parties, Plaintiffs' allegations do not establish that MHS breached those terms. Specifically, although Plaintiffs allege that Defendant failed to safeguard Plaintiffs' PII and PHI and improperly allowed unauthorized access to the same, the Privacy Policy does not contain a promise on the part of MHS to prevent such unauthorized access. While the Notice informs patients that MHS is required to "maintain the privacy of protected health information," it also implicitly warns patients that their information could be compromised by informing patients that MHS is required to "notify you of certain breaches or the

14

inappropriate use or release of your information." (Notice of Privacy Practice, PAGEID # 187.)

The Motion to Dismiss is **GRANTED** as to Count IV.

### 4. **Plaintiffs have stated a claim for breach of fiduciary duty.**

MHS seeks dismissal of Count V arguing that Plaintiffs have not alleged facts to support the creation of a fiduciary relationship. (Mot., PAGEID # 218.) MHS also argues that Plaintiff cannot rely on HIPAA, the FTC Act, or the Gramm-Leach-Bliley Act to demonstrate that MHS had fiduciary duty to secure confidential information. (Mot., PAGEID # 207.)

A fiduciary relationship is one in which "special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis*, 419 N.E.2d 1094, 1097–98 (Ohio 1981) (citations omitted). The relationship "need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed." *Id.*

Ohio recognizes that medical providers, like MHS, hold "a fiduciary position" with patients and have a duty to keep patient's medical information confidential. *Herman*, 2006 WL 3240680 at *3; *see also Biddle,* 715 N.E.2d 518, 523 (recognizing that the "nature of the physician-patient relationship" is one of a "fiduciary character" that "is customarily understood to carry an obligation of secrecy and confidence.") Plaintiffs have stated a claim for breach of fiduciary duty.

Defendant's motion to dismiss is **DENIED** as to Count V.

### 5. Plaintiffs have stated a claim for unjust enrichment.

MHS next argues that Plaintiffs failed to state a claim for unjust enrichment. (Mot., PAGEID # 221–24.)

Unjust enrichment occurs when "when a party retains money or benefits which in justice and equity belong to another." *Dailey v. Craigmyle & Son Farms. LLC*, 894 N.E.2d 1301, 1309 (Ohio App. 2008) (internal citations omitted). To state a claim for unjust enrichment, a plaintiff must allege: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Id.*

Plaintiffs have sufficiently alleged an unjust enrichment claim. Viewing the Amended Complaint in the light most favorable to Plaintiffs, they conferred a benefit on MHS by paying beyond what was owed for their medical treatment to ensure security of their private information; MHS knew that Plaintiffs paid this additional money for the security of their information; and MHS was enriched when it retained this additional payment without using it to secure Plaintiffs' information. (*Id.* at ¶¶ 238–39.) It would be unjust for MHS to retain this benefit because MHS failed to safeguard the Plaintiffs' information. *See Delahunt v. Cytodyne Techs.*, 241 F.Supp.2d 827, 836 (S.D. Ohio) (Marbley, J.) (plaintiff stated a claim for unjust enrichment by alleging that plaintiff conferred a benefit on defendants in exchange for a product that did not match defendant's representation of it).

Accordingly, Defendant's motion to dismiss is **DENIED** as to Count VI.

16

### 6. Plaintiffs' declaratory judgment claim is not duplicative.

In their final argument for dismissal, MHS argues that the Court should dismiss Plaintiffs' declaratory judgment claim because the claim is duplicative and because the alleged harm has already occurred. (Mot., PAGEID # 226.)

The Declaratory Judgement Act is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). To decide whether to entertain a declaratory judgment action, the Court considers the following factors:

> (1) whether the judgment would settle the controversy;
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
> (5) whether there is an alternative remedy that is better or more effective.

*Bituminous Cas. Corp. v. J&L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004). Only factors (1), (2), and (5) are at issue here.

Despite its argument that the harm has already occurred, MHS is still in possession of Plaintiffs' PII and PHI and, according to Plaintiffs, it has not taken the necessary steps to secure its system leaving Plaintiffs' information at risk for future data breaches. (Am. Compl. ¶ 249.) Accordingly, the *Bituminous* factors weigh in favor of allowing the declaratory judgment to claim to go forward—while Plaintiffs' other claims would allow for an award of damages, they will not clarify

17

the prospective obligations MHS may have to protect their PII and PHI. In that regard, only a declaratory judgment claim could provide Plaintiffs with complete relief.

Defendant's Motion to Dismiss is **DENIED** as to Plaintiffs' declaratory judgment claim in Count VII.

## IV. MOTION TO STRIKE CLASS ALLEGATIONS

### A. Standard of Review

Rule 23 of the Federal Rules of Civil Procedure governs federal class actions. To obtain class certification, a lead plaintiff must satisfy each of the four requirements in Rule 23(a) and must also satisfy the prerequisites of at least one of the three types of class actions provided for by Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

When a defendant moves to dismiss the class allegations before discovery, the district court evaluates the motion using a standard similar to the one it uses when considering a Rule 12(b)(6) motion to dismiss. *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269 (W.D. Wis. 2013). The burden for striking class allegations is onerous. *Rodriguez v. Life Time Fitness, Inc.*, 2019 WL 4674863, at *3 (S.D. Ohio 2019). To strike class allegations, a defendant must show that "the plaintiff will be unable to demonstrate facts supporting certification, even after discovery and the creation of a full factual record. *Jimenez v. Allstate Indem. Co.*, 2010 WL 3623176, at *3 (E.D. Mich 2010). This requires the court to find that "no proffered or potential factual development offers any hope of altering that conclusion." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). However, a "motion

18

to strike class allegations is not a substitute for class determination and should not be used in the same way." *Faktor v. Lifestyle Lift*, 2009 WL 1565954, at *2 (N.D. Ohio 2009). In fact, this Court repeatedly has held, that "courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Kirkbride v. Kroger Co.*, 2022 WL 273960, at *9 (S.D. Ohio 2022) (Marbley, CJ.) (citations omitted).

     B.    Analysis

MHS moves to strike Plaintiffs' class allegations on the grounds that (1) the class is overbroad and includes class members who were not injured and do not have standing and (2) to the extent that the class members were injured, the inquiry is too individualized to treat on a class-wide basis.

As to the first argument, in the Sixth Circuit, once the representative plaintiff establishes standing, whether she "will be able to represent the putative class, including absent class members, depends *solely* on whether she is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422–23 (6th Cir. 1998) (emphasis added). MHS does not dispute that the named plaintiffs have standing to represent the class. Thus, to satisfy *Fallcik*, the Court must conduct an "rigorous" analysis of the criteria in Rule 23 to ascertain whether Plaintiffs can represent the purported class. *See Smith v. Sterling Infosystems-Ohio, Inc.*, 2016 WL 6092551 at *3 (N.D. Ohio 2016). However, the parties have not provided the

19

Court with any analysis of Rule 23, so striking class allegations at this stage would be premature. *Id.*

As to MHS's second argument, it is well settled that individualized damage determinations are not a bar to class certification: "'No matter how individualized the issue of damages may be,' determination of damages 'may be reserved for individual treatment with the question of liability tried as a class action.'" *In re Whirlpool*, 722 F.3d 838, 854 (6th Cir. 2013) (citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988).

Accordingly, Defendant's Motion to Strike is **DENIED**.

## V.  CONCLUSION

For the reasons set forth above, MHS's Motion to Dismiss is **GRANTED** as to Counts I, II, III, and VI and **DENIED** as to Counts V, VI, and VII. Additionally, MHS's Motion to Strike is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**