## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **KATHLEEN TUCKER** *et al.*, on behalf of themselves and all others similarly situated, | Case No. 2:22-cv-00184-SDM-EPD |
| Plaintiffs, | **Judge Sarah D. Morrison** |
| v. | **Magistrate Judge Elizabeth P. Deavers** |
| **MARIETTA AREA HEALTH CARE, INC. D/B/A MEMORIAL HEALTH SYSTEM,** | **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| Defendant. | |

Pursuant to Fed. R. Civ. P. 23(e), and this Court's Preliminary Approval Order (Doc. 33), Plaintiffs Kathleen Tucker, Sharon Chaddock, Gerald Davis, Donna Acree, and Cindy Beaver ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, respectfully move this Court for Final Approval of the of Class Action Settlement. The $1,750,000.00 non-reversionary Settlement Fund is a substantial recovery for the roughly 213,657 Class Members and is fair, reasonable, and adequate by all measures. Plaintiffs met and conferred with Counsel for Defendant and determined that this Motion is unopposed.

In support thereof, Plaintiffs rely upon the accompanying Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement; the Declaration of Terence R. Coates in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Coates Final Approval Decl.") attached as **Exhibit 1**; the Settlement Administrator Declaration ("P&N Decl.") attached as **Exhibit 2**; Plaintiffs' Unopposed Motion for Preliminary Approval, previously granted; records, pleadings, and papers filed in this action; and such other evidence or argument that may be presented to the Court at or before the December 4, 2023 Final Approval

Hearing. For the Court's convenience, a Proposed Order Granting Final Approval of Class Action Settlement is attached as **Exhibit 3**.

---

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

---

## I.      INTRODUCTION

On January 19, 2022, the first of several class action lawsuits were filed against Defendant Marietta Area Health Care, Inc., d/b/a Memorial Health System ("MHS" or "Defendant") alleging that Defendant failed to protect employees, their dependents, and other third parties' sensitive information from a ransomware attack ("Action"). The actions were consolidated on March 30, 2022 and Plaintiffs filed a Consolidated Class Action Complaint. ("CAC", Doc. 9). After fully briefing a Motion to Dismiss and receiving an Order from the Court dismissing some claims but allowing others to proceed, and after exchanging and reviewing informal discovery, and recognizing the risks and costs of ongoing litigation, Plaintiffs and Defendant agreed it was prudent to mediate this matter before Bennett G. Picker, Esq. of Stradley Ronon Stevens & Young, LLP, a highly respected third-party mediator. Coates Final Approval Decl., ¶¶ 1-2; Settlement Agreement, p. 4 (Doc. 32-1, PageID # 508). After a full-day mediation conducted on March 9, 2023, the Parties agreed to a Settlement Agreement that, if approved by this Court, will fully resolve Plaintiffs' and the Class's claims.

The Class's substantial recovery in this case is a $1,750,000 non-reversionary Settlement Fund designed to cover all settlement costs (notice, fees, administration) and provide three separate forms of cash benefits to Class Members: (1) $50.00 *pro rata* settlement payments of the remaining Settlement Fund (after the payment of any documented monetary losses as described herein, and after payment of attorneys' fees and expenses, the proposed Class Representatives' Service

Awards, and the costs of Settlement Administration) to each Class Member who submits a claim; (2) reimbursement for documented out-of-pocket losses and lost time up to $5,000.00 per claimant, including without limitation, unreimbursed losses relating to fraud or identity theft; professional fees for attorneys, accountants, and credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs incurred on or after the Data Breach, through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges; and (3) reimbursement for loss of time compensated at $25.00 per hour for up to four (4) hours ($100.00 cap) requiring no documentation. Settlement Agreement, ¶¶ 2.1-2.2 (Doc. 32-1, PageID # 517-19). Any remaining funds such as those for settlements checks that are not cashed by the deadline to do so, shall be distributed to a charitable organization approved of by the Parties and subject to Court approval. *Id.*, ¶ 2.2 (PageID # 519).

On June 15, 2023, the Court entered preliminary approval of the Settlement and conditionally certified the Class. *See* Order Granting Preliminary Approval of Class Action Settlement. Doc. 33. In doing so, the Court found the Settlement Agreement was "fair, reasonable and adequate" and that the Notices "meet[] the requirements of Fed. R. Civ. P. 23 and due process, and [provide] the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice." *Id.* at ¶¶ 1, 10 (PageID # 664, 666).

The Court-approved notice plan has now been executed and nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. As of November 7, 2023, of the 213,657[1] Class Members who were sent direct notice of the proposed settlement,

---

[1] The Class consists of 213,657 individuals. Coates Final Approval Decl., ¶ 3; P&N Decl., ¶¶ 6, 14 The Settlement Administrator received over 216,000 files for potential Class Members from MHS during the process of sending notice to the Class. P&N Decl., ¶ 6. The Settlement Administrator

*none* have filed an objection and only 11 have requested to be excluded. Coates Final Approval Decl., ¶ 4; *see also* P&N Decl., ¶ 16. Furthermore, this case boasts a 6.2% claims rate (13,325 claims out of 213,657 Class Members) which is a solid claims rate for a data breach class action settlement, and indicates that the Class strongly favors the Settlement. Coates Final Approval Decl., ¶ 4. There are approximately 13,153 valid claims meaning there is a valid claims rate of roughly 6.1%. P&N Decl., ¶ 16. Because the Settlement is an excellent result for the Class, particularly in view of the risks and delays involved in continued litigation and Defendant's financial limitations, Plaintiffs respectfully request that the Court grant final approval of the Settlement, grant Plaintiffs' pending Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards (Doc. 34), and enter a final order and judgment dismissing this case.

## II.     FACTUAL BACKGROUND

### A.  Factual Allegations

This is a nationwide class action brought by Plaintiffs on behalf of themselves and a nationwide class of "all persons who utilized MHS's services, whose Sensitive Information was maintained on MHS's system that was compromised in the Data Breach, and who were sent a notice of the Data Breach." CAC, Doc. 9, ¶ 150. The case arises from the alleged compromise of personal identifying information ("PII") and protected health information ("PHI") (PII and PHI are collectively referred to as "Sensitive Information" or "Private Information") as a result of a 2021 cyberattack MHS experienced ("Data Incident"). *Id.* at ¶¶ 2, 83-97. Plaintiffs and Class Members include individuals who used MHS's services whose Sensitive Information was

---

then removed any filed relating to Class Members who were included twice (the deduplication process) yielding 213,657 unique Class Members.

compromised in the Data Incident. *Id.* at ¶ 150. In response to the Data Incident, Defendant sent a Notice Letter ("Notice Letter") to each impacted individual providing a description of the type of Sensitive Information involved and explaining that the data was exfiltrated from MHS's systems. *Id.* at ¶¶ 88, 93-94. Plaintiffs allege that the cybercriminals acquired Plaintiffs' and Class Members' Sensitive Information. *Id.* at ¶ 95.

### B. The Litigation

On January 19, 2022, Plaintiff Tucker filed the first complaint against Defendant in this Court for claims relating to the Data Incident. Doc. 1. Subsequent related complaints were filed, and on June 15, 2022, the Court entered an order consolidating the related actions. Doc. 4. On April 29, 2022, Plaintiffs filed their CAC, in which they alleged, individually and on behalf of the Class, that as a direct result of the Data Incident, they suffered numerous actual and concrete injuries and would likely suffer additional harm into the future. Doc. 9. Plaintiffs, individually and on behalf of the Class, asserted claims for (1) negligence, (2) negligence *per se*, (3) breach of express contract, (4) breach of implied contract; (5) breach of fiduciary duty; (6) unjust enrichment, and (7) declaratory relief. Plaintiffs also sought injunctive relief, declaratory relief, monetary damages, and all other relief in equity or by law. CAC, PageID 178-79.

On May 13, 2022, MHS moved to dismiss Plaintiffs' claims in their entirety, (Doc. 10), and moved to strike Plaintiffs' class allegations (Doc. 11). Those motions were fully briefed by the Parties. On January 26, 2023, this Court issued an Order granting MHS's motion to dismiss as to Plaintiffs' claims for negligence, negligence *per se*, breach of express contract, and unjust enrichment but denying MHS's motion as to Plaintiffs' claims for breach of implied contract, breach of fiduciary duty, and declaratory relief. Doc. 30. The Court also denied MHS's motion to strike Plaintiffs' class allegations. *Id.*

### C. Negotiations and Settlement

The Settlement is the result of months of arms-length negotiation and hard bargaining. Before entering into this Settlement Agreement, Defendant produced informal discovery addressing the manner and mechanism of the Data Incident, the number of impacted individuals broken down by state, the notice program, the ransom response, security enhancements implemented following the Data Incident, and available insurance coverage. Doc. 32-002, ¶¶ 6-7. On March 9, 2023, the Parties engaged in a full-day mediation session with Bennett Picker of Stradley Ronon Stevens & Young, LLP – a mediator with substantial experience handling data breach class action mediations – which resulted in the Settlement Agreement that is the subject of this Motion. Coates Final Approval Decl., ¶ 1.

The Settlement resolves all claims related to the Data Incident on behalf of the Class. *See generally* Settlement Agreement (Doc. 32-1). Defendant has provided access to confirmatory discovery regarding the number of Class Members broken down by category (*e.g.*, current customer, former customer, current employee, former employee, etc.) and state of residence, the facts and circumstances of the Data Incident and Defendant's response thereto, and the improvements made to protect Sensitive Information. *Id.*, ¶ 2.3.

### D. Proposed Class

The proposed Class is defined as:

**All natural persons residing in the United States who were sent a Notice Letter notifying them that their Private Information was compromised in the Data Breach.[2]**

*See id.*, ¶ 1.6. The Class is comprised of approximately 213,000 individuals nationwide. P&N Decl., ¶¶ 6, 13.

---

[2] "Data Breach" means the "Data Incident" that is the subject of this Action.

### E. Release

Plaintiffs and Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Incident at issue in this litigation. Settlement Agreement, ¶ 6.1.

### F. Preliminary Approval and the Fairness Process

On May 16, 2023, Plaintiffs moved the Court to grant preliminary approval of the proposed Settlement, to approve the proposed notice plan as the best notice practicable under the circumstances, and to schedule a Final Approval Hearing. *See* Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action (Doc. 32). On June 15, 2023, the Court entered an order preliminarily approving the Settlement and conditionally certifying a Class. *See* Order Granting Preliminary Approval (Doc. 33). In doing so, the Court found that the Settlement Agreement was "fair, reasonable and adequate" and the Notices "meet[] the requirements of Fed. R. Civ. P. 23 and due process, and [provide] the best notice practicable under the circumstances, and shall constitute due and efficient notice to all persons or entities entitled to notice." *Id.,* ¶¶ 1, 10 (PageID # 664, 666).

Under the Court-approved notice plan, Postlethwaite & Netterville ("P&N") mailed a written notice to Class Members for whom valid mailing addresses were known and/or sent an email notice to Class Members for whom valid email addresses were known. P&N Decl., ¶ 3, 9. The Notice was sent via mail to 213,657 Class Members for whom a mailing address was available. *Id.*, ¶ 9. For those Postcard Notices that were returned without forwarding addresses, P&N attempted to locate a current mailing address and remailed 6,655 notices. *Id.*

In addition, P&N set up the Settlement Website containing, among other things, copies of the Plaintiffs' complaints, the Settlement Agreement, the Court's Preliminary Approval Order, and

Class Counsel's application for attorneys' fees, costs, and service awards. *Id.*, ¶ 11. The Settlement Website included a case timeline, which specified important dates and deadlines for the Settlement, including the deadlines for Class Members to submit claims, file objections and submit requests for exclusion, and the date and time of the Final Approval Hearing. *Id.* Class Members were given the opportunity to submit a claim online at the Settlement Website, or if they preferred, print out a physical claim form for filing via email or mail. *Id.*,¶ 12.

On August 30, 2023, Class Counsel filed their Motion for Attorneys' Fees, Costs, and Expenses, and Class Representative Service Awards. Doc. 34. In doing so, Plaintiffs respectfully asked the Court to approve $583,333.33 in attorneys' fees and $11,116.25 in expenses incurred to achieve this Settlement. *Id.* Plaintiffs further sought Court approval of service awards of $5,000.00 for each of the nine Class Representatives. *Id.*

## III.    ARGUMENT

### A. Final Class Certification for Settlement Purposes is Appropriate

This Court preliminarily approved class certification for Settlement purposes in its June 15, 2023 Order. Doc. 33. At this juncture, final approval is appropriate.

#### 1.    <u>The Elements of Rule 23(a) Are Satisfied</u>

For a lawsuit to be maintained as a class action under Rule 23, the plaintiff must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Here, all four elements are satisfied.

### a.  A Class of 213,657 Satisfies Numerosity

Rule 23(a)(l) requires that plaintiff demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, there are roughly 213,657 Class Members, satisfying the numerosity requirement. Coates Final Approval Decl., ¶ 1.

### b.  Commonality is Satisfied

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

Here, Plaintiffs' claims turn on whether Defendant's security environment was adequate to protect Class Members' Sensitive Information. Resolution of that inquiry revolves around evidence that does not vary from class member to class member, and so can be fairly resolved— at least for purposes of settlement—for all Class Members at once.

### c.  Typicality is Satisfied

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented

group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992)); *see also Am. Med. Sys.*, 75 F.3d at 1082 (same). Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented.

Here, the claims all involve Defendant's alleged failure to protect Plaintiffs' and Class Members' Sensitive Information. Thus, Plaintiffs' claims are typical of those of the claims of the Class, and they are appropriate Class Representatives. Typicality is satisfied.

### d. Plaintiffs and Class Counsel Adequately Represent the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976). Here, Class Representatives have no conflicts with the Class and have participated actively in the case. Coates Final Approval Decl., ¶ 8. Furthermore, they were active participants in the Litigaiton and Settlement process. *Id.* at ¶ 7. Moreover, Class Counsel have significant experience in class and complex litigation, including more than 100 data breach class actions in state and federal courts throughout the country. Coates Decl. in Support of Attorneys' Fees, Expenses and Class Representative Service Awards, ¶¶ 3-11 (Doc. 34-1, PageID # 691-97). The adequacy requirement is satisfied.

## 2. **The Requirements of Rule 23(b)(3) are Met in the Settlement Context.**

Plaintiffs seek to certify a Class for settlement purposes under Rule 23(b)(3), which has two components: predominance and superiority. When assessing predominance and superiority, the Court may consider that the class will be certified for settlement purposes only, and a showing of manageability at trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). With respect to predominance, the Sixth Circuit has explained that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig*., 722 F.3d 838, 860 (6th Cir. 2013). With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. Indeed, the answers to these questions are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go right to the center of the controversy, and the answers will be the same for each Class Member. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied.

The second prong of Rule 23(b)(3) — that a class action is superior to other available methods for the fair and efficient adjudication of the controversy — is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Settlement would relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against MHS. *See Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages,

aggrieved persons may be without any effective redress unless they employ the class-action device." (internal quotations omitted)).

Adjudicating individual actions here is impracticable. The amount in dispute for individual class members is too small, the technical issues are too complex, and the required expert testimony and document review would be far too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there will be no trial.").

### B. The Notice Program Preliminarily Approved by the Court was the Best Notice Practicable under the Circumstances, and was Successful

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2). *See In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *Lewis v. Huntington Nat'l Bank*, No. 2:11-CV-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 2013) (citing Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th ed. 2004)). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual

notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.*, 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. Coates Final Approval Decl. ¶ 5; P&N Decl. ¶ 3. In addition to the direct notice plan, the Settlement Administrator created the dedicated Settlement Website (https://www.mhsdatasettlement.com/). P&N Decl., ¶ 5.

The Settlement Administrator estimates that between direct notice and other forms of notice, the notice program reached approximately 88.3% of Class Members. P&N Decl. ¶ 14. A notice reaching 70-95% of the class is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, at 3 (2010) (www.fjc.gov/sites/default/files/2012/NotCheck.pdf); *see also Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022). The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). Doc. 32-1 (PageID # 550, *et seq.*). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement. *Id.*, PageID #550-51. The notice program satisfies the structures of Rule 23 and due process and should be approved by the Court.

### C. The Settlement Agreement Merits Final Approval

Pursuant to Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the

Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co*., 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc*., 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

A. Whether the class representatives and class counsel have adequately represented the class;

B. Whether the proposal was negotiated at arm's length;

C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

D. Whether the proposal treats class members equitably.

*Id*. These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id*. at *Advisory Committee's Note to 2018 amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these

factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval here.

### 1. The Settlement Resulted from Mediated, Arm's Length Negotiations without any Risk or Evidence of Fraud or Collusion

Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 at 90 (4th Ed. 2002); *see also Roland v. Convergys Customer Mgmt. Grp. Inc.*, No. 1:15-CV-00325, 2017 WL 977589, at *1 (S.D. Ohio Mar. 10, 2017) (noting that settlement was "reached after good faith, arms' length negotiations, warranting a presumption in favor of approval"). The Settlement was the result of extensive, contentious, arm's length negotiations between counsel with many decades of experience in handling complex, class action litigation. Settlement negotiations in this case took place over the course of several months and involved a private mediation session to finalize the Settlement Agreement. Coates Final Approval Decl., ¶ 1. No collusion existed during the settlement process. *Id.*

### 2. The Complexity, Expense, Likely Duration of the Litigation, and Substantial Risk for Plaintiffs Warrants Final Approval of the Settlement

The Sixth Circuit has identified the likelihood of success on the merits as the most important factor a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at \*16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).[3] This case is no different in that it is a data privacy class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at \*1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage).

Class certification is another hurdle that would have to be met—and one that has been denied in certain other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013). Further, if Plaintiffs are successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc.*, No. 14-cv-6233, 2015 WL 5444651, \*11 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could

---

[3] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at \*1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at \*6 (W.D. Ky. Aug. 15, 2008) (the "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Class Members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Given the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval.

While Plaintiffs are confident in the strength of their claims, they are also pragmatic and aware of the various defenses available to Defendant, as well as the risks inherent to continued litigations. Defendant has consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would vigorously defend the cases. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face the further risk of not receiving any relief at all.

The Settlement offers immediate, significant, and substantial relief to all Class Members who submit a claim. The Settlement delivers real value to Class Members. Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

### 3. <u>The Fact Plaintiffs' and Defendant's Counsel and Plaintiffs Recommend Approval of the Settlement Strongly Indicates that the Settlement is Fair, Reasonable, and Adequate</u>

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir.

1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by a class representative who, like the Plaintiffs here, was intimately involved in the litigation and supports the Settlement. *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiffs support this Settlement because it provides Class Members with immediate and substantial benefits. As the result of informal discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

### 4.  The Class's Reaction Overwhelming Supports the Settlement

That no Class Member has objected to the Settlement, only 11 Class Members have requested exclusion, and Class Members have submitted claims at the rate of roughly 6.2% indicate that the Class strongly supports the Settlement. This further supports final approval. Coates Final Approval Decl., ¶ 4.

### 5.  This Settlement Serves the Public Interest

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action

18

suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[4] This Settlement serves the public's interest by avoiding protracted litigation and freeing up judicial resources. *See In re Telectronics Inc.*, 137 F. Supp. 2d 985, 1025 (S.D. Ohio 2001); *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals").

Particularly in light of the immediate cash benefits that the Settlement provides to the Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

### 6. <u>The Other Rule 23(e) Factors Support the Settlement</u>

To the extent not addressed above, the remaining Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). The attorneys' fees of one-third of the common fund are well within the range of reasonableness for fees in a case of this nature and will not be paid until the Effective Date. Rule 23(e)(2)(C)(iii); *see also* Doc. 34, PageID # 676-77 (listing cases supporting a fee request of 1/3 of the common fund). There is no undisclosed agreement made in connection with the Settlement. Coates Final Approval Decl., ¶ 9; *see also* Rule 23(e)(2)(C)(iv). All Class Members are treated equitably relative to each other—they all have the opportunity for a *pro rata* payment of money.

---

[4] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (noting that "[p]ublic policy generally favors settlement of class action lawsuits").

Rule 23(e)(2)(D). In total, all of the factors to be considered when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

## IV.     CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiffs Tucker, Chaddock, Davis, Acree, and Beaver respectfully request that the Court grant final approval of class action settlement, including awarding Service Awards in the amount of $5,000 to each Class Representative, $583,333.33 in reasonable attorneys' fees, and $11,116.25 in litigation expenses, and enter the proposed Order attached as **Exhibit 3**.

Respectfully submitted,

*/s/ Terence R. Coates*
Terence R. Coates
**MARKOVITS, STOCK
& DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
tcoates@msdlegal.com

Joseph M. Lyon
**THE LYON FIRM**
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: (513) 381-2333
jlyon@thelyonfirm.com

Gary E. Mason (*pro hac vice*)
**MASON, LLP**
5335 Wisconsin Ave., NW, Suite 640
Washington, DC 20015
Phone: 202.640.1160
gmason@masonllp.com

Jeffrey S. Goldenberg (0063771)
**GOLDENBERG SCHNEIDER, L.P.A.**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Phone: (513) 345-8297

Fax: (513) 345-8294
*jgoldenberg@gs-legal.com*

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2023, I served a copy of the foregoing via electronic filing in the ECF system.

<u>/s/ *Terence R. Coates*</u>
Terence R. Coates